**PARISH MCCABE, PC**
**By:  Raul Jauregui, Esquire**
**PA Bar ID No. 92366**
**105 Rutgers Avenue**
**PO Box 121**
**Swarthmore, PA 19081**
**215.559.9285**
**RJ@ParishMcCabe.com**

**Attorneys for Plaintiffs**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

**Yenny Lora**                                          :
                                                        :
             Plaintiff                              :
                                                        :
**Mercedes Palma**                                      :
                                                        :
             Plaintiff                              :
                                                        :       **Civil Action**
         VS.                                    :
                                                        :       **NO.  _____**
**NHS, Inc.**                                           :
                                                        :       **Jury Trial Demanded**
                                                        :
         Defendant                             :
                                                        :
**Malcolm Musgrove**                                    :
                                                        :
         Defendant                             :
                                                        :
**Kim Richardson**                                      :
                                                        :
         Defendant                             :
                                                        :
**Tamitra Foreman**                                     :
                                                        :
         Defendant                             :
                                                        :
**Frank Gray**                                          :
                                                        :
         Defendant                             :
_____:

## COMPLAINT

I. __INTRODUCTION__

1.  Plaintiffs, Yenny Lora and Mercedes Palma, are adult individuals who allege through their attorneys, Parish McCabe, PC, that their rights to be free from discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* and under the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.* and under state law, have been violated by their former employer, NHS, Inc.  Plaintiffs are 2 out of 15 former NHS, Inc., employees who have recently filed charges of discrimination with the EEOC against NHS, Inc.  Plaintiffs also allege that NHS, Inc., has violated their right to be paid overtime pursuant to the FLSA and the Pennsylvania Minimum Wage statutes.  Plaintiffs further allege that NHS defamed their character pursuant to 42 Pa. C.S.A. § 8343 when, among other events, NHS Inc., expected plaintiffs to cooperate in a fraudulent billing scheme.  Through this and other acts of NHS also placed the plaintiffs in False Light.  As part of their refusal to participate in this false claim plaintiffs bring counts under the anti-retaliation provision of the False Claims Act, 31 USC §§3729.  Finally, plaintiff Palma only avers that her right to be free from Intrusion Upon Seclusion and to be free from civil breaches of the Pennsylvania Wiretapping Law, 18 Pa. Cons. Stat. §§5703, 5725 as well as the Federal Wiretap Act, 18 USC §2511 has been violated.  In support, plaintiffs aver that:

II. __PARTIES__

2.  Plaintiff, Yenny Lora, is a Latina adult female of Dominican national origin who resides in Philadelphia County, Pennsylvania.

3. Plaintiff, Mercedes Palma, is a Latina adult female of Mexican national origin who resides in Delaware County, Pennsylvania.

4. At all times material hereto, Plaintiffs were employees and a former employees with NHS, Inc, (hereinafter referred to as "Defendant NHS, Inc.,").  Defendant NHS, Inc., is an entity engaged in an industry or activity affecting commerce and has over 300 employees nationwide for each working day during each of 20 or more calendar work weeks in the current or preceding year.

5. Defendant Malcolm Musgrove is an African American male who at the times relevant to this complaint worked for defendant NHS, Inc., as a vice-president in NHS, Inc.'s offices in Philadelphia, Pennsylvania.

6. Defendant Kim Richardson is an African American female who at the times relevant to this complaint worked for defendant NHS, Inc., as a regional compliance officer from NHS, Inc.'s offices in Blue Bell, Montgomery County, Pennsylvania.

7. Defendant Tamitra Foreman is an African American female, who, by her own admission, was instructed by NHS Inc.'s employee and co-defendant Frank Gray to secure and did secure a recording of a private conversation of plaintiff Palma's without Palma's consent.  Foreman then provided this conversation in an electronic format to defendant NHS, Inc. including personally to co-defendant Kim Richardson  (**Exhibit A** is an email string from defendant Foreman where she admits to the taping, to having provided it to NHS, Ins., then refusing to provide plaintiff's counsel with a copy of it or to preserve it).  Defendant foreman is a resident of Philadelphia County.

8. Defendant Frank Gray is an African American male who at the times relevant to this complaint worked for defendant NHS, Inc., as a social worker from NHS, Inc.'s offices in Mount Airy, Philadelphia County, Pennsylvania.

## III. JURISDICTION and VENUE

9. Plaintiffs incorporate by reference the previous paragraphs as if the same were set forth more fully at length herein.

10. Jurisdiction is conferred upon this Honorable Court by 28 U.S.C. § 1337 relating to "any civil action or proceeding arising out of any act of Congress regulating commerce," 28 U.S.C. § 1343(4), and 28 U.S.C. § 1331. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq* . the False Claims Act, 31 USC §§3729 and the Federal Wiretap Act, 18 USC §2511 among other federal statutes.  Plaintiffs further invoke the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a), to hear and decide claims arising under the defamation, privacy and wiretapping laws of the Commonwealth of Pennsylvania, and under the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.* and the Pennsylvania Minimum Wage Statutes.

11. Plaintiffs exhausted their administrative remedies when Plaintiffs submitted respective verified complaints to the Equal Employment Opportunity Commission on or about August 23, 2011 for plaintiff Lora and July 24, 2010 and August 31, 2011 for plaintiff Palma that then received EEOC Charge Numbers **530-2102-0025 for plaintiff Lora and 530-2010-03091 for plaintiff Palma.**  These charges were dual filed with the Pennsylvania Human Relations Commission.

12. On April 23, 2012, Plaintiffs received their "Dismissal and Notice of Rights" for their federal claims against Defendant from EEOC. (**Exhibit B**).

13. On July 24, 2011, it had been one (1) year since the filing of the PHRC complaint of Plaintiff Palma, thus Plaintiff Palma is entitled to bring her claims pursuant to the PHRA against Defendant NHS, Inc.

14. Plaintiff Lora presented a demand for back unpaid wages to NHS, Inc. for $16,202.16 on September 28, 2011. Plaintiff Palma did the same for $37,440.00 on May 16, 2011   NHS, Inc., has ignored both requests.

15. Venue is appropriately laid in the United States District Court for the Eastern District of Pennsylvania inasmuch as all parties regularly conduct business within this District and the acts complained of by Plaintiffs arose herein.

## IV. <u>FACTS</u>

16. Plaintiffs incorporate by reference the previous paragraphs as if the same were set forth more fully at length herein.

### <u>As to plaintiff Yenny Lora:</u>

17. Plaintiff, a Latina of Dominican National Origin, was hired by Defendant NHS, Inc., as a case worker/social worker and terminated for no legitimate reason on May 18, 2011.

18. Throughout her seven year employment with NHS, Inc., plaintiff's supervisors were either White or African American and the overwhelming majority of her comparators were African American.

19. Plaintiff Lora has been subjected to a **racially hostile** work environment which is and was of an ongoing and continuing nature.  While not an exhaustive list, the following events clearly illustrate the racial hostility of the environment at defendant NHS, Inc. and against plaintiff:

   a. NHS, Inc., employee Craig Wagner, who is white, yelled at and publicly humiliated plaintiff Lora to leave the premises immediately as she was being fired in a manner that was clearly tinged with racial animus and also in a manner that Wagner never used with any of Lora's African American comparators.

   b. Plaintiff's supervisors at NHS, Inc., including Rachel Maid (who is African American), Lori Paster (who is White) and Craig Wagner refused to meet, instruct, counsel or otherwise interact with plaintiff and only plaintiff.  These same persons routinely changed expectations and directives that were ineffectively conveyed to Lora and which made it significantly more difficult for her, and only her unlike her African American comparators who were not treated thus, to discharge the duties of her job or to grow and develop in that position.  They acted with racial animus in creating this environment.

   c. There is no legitimate business reason for NHS, Inc., to have acted in this way or to have allowed this racially hostile environment to develop.

20. Plaintiff has been subjected to **discrimination and disparate treatment based on her race** (Latina) and her national origin (Dominican) which is and was of an ongoing and continuing nature.  While not and exhaustive list, the following

events clearly illustrate the racial discrimination and different race-based treatment of the NHS, Inc., environment:

   a.  Plaintiff's race was the determinative factor in her being treated worse than her African American comparators, for example she was terminated on May 18, 2011 and the termination letter states Lora committed violations that are not only not real violations, but, more importantly, are acts that Lora's African American comparators committed regularly and for which the African American comparators were never disciplined for.

   b.  Plaintiff's race was the determinative factor in her being disciplined, for example, when she complained that being asked to seek back dated signatures from her patient's parents was improper, when her African American comparators were not disciplined when committing the same act or acts that were actual violations of NHS, Inc.'s employment policies.

   c.  Most significantly, plaintiff avers that Maid, Paster and Wagner actually selected a "case load" for Lora that was arbitrary and significantly more demanding than this case load had ever been for Lora or that it continued to be for her comparators who were African American.  The demanding nature of the re-designed case load involved Maid, Paster and Wagner assigning to Lora an unusually difficult group of clients who were also spread over an unusually large geographic area.  This forced Lora to travel more and to work in more stressful cases than her comparators who were African American.

21. NHS, Inc.'s proffered reason for terminating plaintiff Lora, that "she had refused to follow instruction/insubordination" is pretext and impossible because what plaintiff Lora refused to do was go out on NHS, Inc.'s behalf and collect signatures on backdated billing forms from her patients because Lora believed this was potentially fraudulent and certainly against her understanding of the social worker's duties to her clients.

22. Plaintiff has been subjected to a **hostile work environment** because of her race (Latina) and national origin (Dominican) which was frequent, severe and pervasive while at NHS, Inc., including:

   a. Plaintiff Lora avers that defendant NHS, Inc.'s employees Maid, Paster and Wagner routinely laughed at her and at her suggestions in a discriminatory and racist manner, claimed to not understand her accent, to not know what she was saying, to not believe she had doctor's appointments to attend, to not want or need to meet with her, to not properly or even adequately inform her in a supervisory setting what was it, if anything, in her professional behavior that was not up to par, all in a frequent, severe and pervasive manner.

   b. Plaintiff Lora at no time welcomed this conduct.

   c. The only reason why defendant NHS, Inc., subjected plaintiff Lora to this conduct was because NHS, Inc., dislikes plaintiff's race.

   d. Any reasonable person would have found the conduct that NHS, Inc., forced plaintiff Lora to endure abusive or hostile.

    e.  Lora avers that this hostility came from NHS, Inc.'s conduct as her own was always professional.

    f.  As a result of this conduct NHS, Inc., failed to promote and eventually terminated plaintiff Lora's employment.

23. Plaintiff Lora had complained on numerous occasions to numerous members of the NHS, Inc., management about this hostile work environment and nothing was done to remedy it.

24. Plaintiff has been **retaliated** against based on her engagement in race-based protected conduct.  The retaliation was of an ongoing and continuing nature. While not an exhaustive list, the following events clearly illustrate NHS Inc.'s retaliation against plaintiff Lora following her complaint of being treated differently because of her race:

    a.  Plaintiff complained of race-based discrimination and hostility in the work environment to NHS, Inc., management as early as June, 2010.

    b.  After this complaint, the race-based discrimination and the hostility that plaintiff had endured at NHS, Inc., actually increased including adverse employment actions in the form of unwarranted discipline, uneven application of discipline, harassment and eventual termination on the same date of her last complaint to NHS, Inc.

    c.  There is no other reason to explain why this increase in the hostility took place.

d.  This increase in the hostility certainly would deter anyone from complaining about the race-based discrimination and hostility in the first place.

25. Plaintiff's termination from NHS, in fact, followed immediately from her last complaint and is for no legitimate business reason as she was terminated for what NHS, Inc., calls "insubordination" which plaintiff Lora avers is the "pretext" used to hide NHS's racial animus against her after she complained to management of being treated worse than her African American comparators and of being uncomfortable with NHS Inc.'s request that she go to her patient's parents and elicit from them signatures on backdated billing forms.

26. Plaintiff has been terminated as retaliation for her complaint or **internal whistle blowing** concerning NHS, Inc.'s alleged scheme to backdate and defraud the City of Philadelphia and through their payor DBHIDS, as well as eventually Medicare which funded the payment.  While not exhaustive, the following illustrates plaintiff Lora's averment that she was terminated in violation of the anti-retaliation provision of the **False Claims Act**:

a.  Plaintiff Lora complained to Rachel Maid, Lori Paster and Craig Wagner, her supervisors at NHS, Inc., that when they were asking her to go out to her patient's parents and make them sign a billing form or invoice for services that were either rendered in the past or never rendered at all (plaintiff Lora was not in a position to ascertain this) she was being asked to engage in the falsification of statements that were material to bill Medicare fraudulently; for services that may not have been provided.

b.  Plaintiff Lora voiced this concern specifically to her supervisors.

c.  NHS, Inc. was not receptive to plaintiff Lora's complaint and in fact disciplined her in writing and eventually terminated her claiming that her discomfort and eventual refusal to collect these signatures on these back dated forms was "insubordination."  (**Exhibit C** is Lora's termination from NHS, Inc., with the incredible admission that she was being fired for refusing to collect these signatures).  It is plaintiff Lora's position that she told NHS that what NHS, Inc., calls in its own forms her "insubordination" is really her refusal to participate in a fraud scheme against a federal, Medicare funded program for autistic children in Philadelphia and that she complained as much to her supervisors who retaliated against her for refusing to participate in a false claim.

d.  It is plaintiff Lora's position that she was terminated for her refusal to engage in the activities she avers were or may have been an attempt to defraud the City of Philadelphia, its agency DBHIDS and the funding source for this program, Medicare, with a false claim.

**As to plaintiff Mercedes Palma:**

27. Plaintiff, a Latina of Mexican National Origin, was hired by Defendant NHS, Inc., as a program supervisor and terminated for no legitimate reason on May 1, 2011.

28. Throughout her employment plaintiff's supervisors were either White or African American and the overwhelming majority of her comparators were African American.

29. Plaintiff Palma has been subjected to a **racially hostile** work environment which is and was of an ongoing and continuing nature.  While not an exhaustive list, the following events clearly illustrate the racial hostility of the environment at defendant NHS, Inc. and against plaintiff:

   a.  There is deposition testimony from a former NHS, Inc., employee, Mr. Timothy Pell who stated he saw Palma's supervisors at NHS, Inc., Carmen Hubbard and Nicola Brooks, openly calling her "retarded" and making derogatory public statements about her written English.  These supervisors of Palma's are African American females who acted with racial animus against Palma.

   b.  Defendant Musgrove as well as other African American management-level employees of NHS, Inc., routinely yelled and screamed threats of disciplinary action against Palma and then proceeded to issue completely false and racially instigated disciplinary actions against Palma.

   c.  Plaintiff avers that her African American supervisors routinely hid, misplaced and actually took work-related documents from Palma's possession and thus made it impossible for Palma to finish tasks.

   d.  Plaintiff avers that her African American supervisors routinely instructed plaintiff's African American employees to ignore plaintiff and to simply do what they felt like.  This undermined plaintiff's authority as well as produced a total racial tension between plaintiff and those whom she supervised, instigated by those who supervised plaintiff.

e.   There is no legitimate business reason for NHS, Inc., to have acted in this way or to have allowed this racially hostile environment to develop.

30. Plaintiff has been subjected to **discrimination and disparate treatment based on her race** (Latina) and her national origin (Mexican) which is and was of an ongoing and continuing nature.  While not and exhaustive list, the following events clearly illustrate the racial discrimination and different race-based treatment of the NHS, Inc., environment:

a.   Plaintiff's race was the determinative factor in her being treated worse than her African American comparators, for example when she offered to go outside her duties and help "reformat charts" her African American supervisors Hubbard and Brooks actually transformed this offer into a written disciplinary action against Palma alleging that Palma had failed to "reformat charts".  Chart reformatting is not a part of Palma's job.  She volunteered to help get that task done and in fact did do it.

b.   Plaintiff's race was the determinative factor for her being disciplined over, specifically, her attendance record.  First of all, plaintiff never had a set schedule, none in Plaintiff's position did.  Second, plaintiff not only worked all the hours she was supposed to, but in effect several more (thus the FLSA claim).  Finally, plaintiff had been given a flexible schedule to attend physical therapy.  Yet plaintiff's African American supervisors Brooks and Hubbard accused her of not being on the job for the requisite number of hours.  Not only is this false but plaintiff also alleges that her

African American comparators who were not at work for as long as they should have been were never disciplined for this action.

31. Defendant NHS's reason for terminating plaintiff is nothing but the most ridiculous of lies all perpetrated by a tight conspiracy of African American workers against Palma.  The legitimate non-discriminatory reason that NHS has offered in separate litigation, under oath, is that Palma violated HIPAA.

32. Palma never violated HIPAA simply because Palma is not covered by HIPAA nor did she ever speak of any of her clients, even under the defendants' admission of what they learned through their illegal wiretap of Palma's private conversation. This is evidence of institutional racial animus against Palma.

33. Plaintiff has been subjected to a **hostile work environment** because of her race (Latina) and national origin (Mexican) which was frequent, severe and pervasive while at NHS, Inc., including:

    a.  NHS, Inc. employees and plaintiff's supervisors Nicola Brooks and Carmen Hubbard (both African American females) continuously screamed at plaintiff.  They refused to meet with her.  They refused to give her instruction. They hid important documents, charts and notices on purpose so that plaintiff could not perform her job.  They changed their expectations of plaintiff's job without letting plaintiff know.  They refused to let plaintiff seek instruction from others and actually deleted her from email distribution lists that were essential to the plaintiff's job performance.

b. Timothy Pell a former NHS, Inc., employee who worked for Palma has stated at deposition that he witnessed plaintiff's supervisor Hubbard stand in front of a sign that plaintiff had on her office door and make derogatory and race-based comments about the sign which was written in English but somehow not in the same racial style that Hubbard considers proper English. Hubbard specifically derided plaintiff's sign and said she would have been "embarrassed" to post such a sign. This is sheer racism.

c. Plaintiff Palma at no time welcomed this conduct.

d. The only reason why defendant NHS, Inc., subjected plaintiff Palma to this conduct was because NHS, Inc., dislikes plaintiff's race.

e. Any reasonable person would have found the conduct that NHS, Inc., forced plaintiff Palma to endure abusive or hostile. In fact, defendant Malcolm Musgrove has stated at deposition that if anyone at NHS had called plaintiff "retarded" (as plaintiff and her witness aver) that person would have been fired. That person is still employed at NHS.

f. Palma avers that this hostility came from NHS, Inc.'s conduct as her own was always professional.

34. As a result of this conduct NHS, Inc., failed to promote and eventually terminated plaintiff Palma's employment.

35. Plaintiff Palma had complained on numerous occasions to numerous members of the NHS, Inc., management about this hostile work environment and nothing was done to remedy it.

36. Plaintiff has been **retaliated** against based on her engagement in protected conduct, namely filing a race based internal complaint.  The retaliation was of an ongoing and continuing nature.  While not an exhaustive list, the following events clearly illustrate NHS Inc.'s retaliation against plaintiff Palma following her complaints of being treated differently because of her race:

    a.  As early as December 2, 2010 Palma engaged in protected conduct when she wrote to her supervisor Kaori Nepto (**Exhibit D**) and stated that she was being treated differently and detrimentally because of her race and that she was being retaliated against for having filed a discrimination complaint.  Nepto has already admitted in separate litigation, under oath, that she received Palma's complaint and turned it over to NHS's Human Resources.  Palma again made a race-based complaint in the form of a "grievance" directed to her supervisor on or about April 24, 2011 in writing (**Exhibit E**).

    b.  Palma had filed a charge of discrimination with the EEOC on or about July 24, 2010, charge No. 530-2010-03091 prior to her termination and then saw the retaliation from NHS, Inc., increase in a way that would certainly have deterred her wish to either file the charge or write all the race-based complaints to NHS, Inc. that she did.  As a result Palma updated her charge with the EEOC in a second charge after her termination, filed on August 31, 2011; charge No. 530-2012-0025.

    c.  Next, NHS Inc., set in motion a trap for Palma where NHS, Inc., through its employee defendant Frank Gray secured the collusion of defendant

Tamitra Foreman (the mother of NHS's client Tyrick Foreman) to illegally tape record Palma's private conversation with Foreman.  Foreman then took this recording to defendant Kim Richardson at NHS, Inc., complained against Palma for no apparent reason and allowed Richardson and defendant Musgrove to decide to terminate Palma based on their illusory view that Palma had, in an illegal recording, violated HIPAA.  Palma was then fired for this ridiculous reason within months of her complaints of retaliation as well as her complaint of potential violation of the False Claims Act.

    d.  Palma only learned of the identity of the complainant, defendant Foreman, during defendant Richardson's investigation while Palma had already been placed on leave.  Palma never learned of the recording.  That knowledge came after Palma's lawyer interviewed defendant Foreman at her home and met her son, who was no longer an NHS client at that time.

37. There is no reason other than employer race based, protected activity, retaliation to explain why this increase in the hostility took place.  This increase in the hostility certainly would deter anyone from complaining about the race-based discrimination and hostility in the first place.

38. Plaintiff has been terminated as retaliation for her complaint or **internal whistle blowing** concerning NHS, Inc.'s alleged scheme to backdate and defraud the City of Philadelphia and through their payor DBHIDS, as well as eventually Medicare which funded the program.  While not exhaustive, the following illustrates

plaintiff Palma's averment that she was terminated in violation of the anti-
retaliation provision of the **False Claims Act**:

    a.  Plaintiff Palma complained to her supervisors Carmen Hubbard, Nicola
Brooks, Lori Paster, Craig Wagner and defendant Malcolm Musgrove that
when they were asking her to make her staff or to personally go out to her
patient's parents and ask them to sign a billing form or invoice for services
that were either rendered in the past or never rendered at all (<u>plaintiff
Palma was in a position to ascertain that these services had not been
rendered</u>) she was being asked to engage in the falsification of statements
that were material to bill Medicare fraudulently; for services that often
times Palma suspected had not have been provided.

    b.  It was Palma's job to make sure the services had or had not been provided.

    c.  Plaintiff Palma voiced this concern specifically to her supervisors.

    d.  NHS, Inc. was not receptive to plaintiff Palma's complaint and in fact
eventually terminated her claiming pretextualy that Palma had violated
HIPAA.  It is plaintiff Palma's position that what NHS, Inc., calls in its
own forms her "HIPAA violation" is their retaliatory pretext for firing her
in light of her refusal to participate in a fraud scheme against a federally
funded, Medicare paid program and that she complained as much.

    e.  It is plaintiff Palma's position that she was terminated retaliatorily for her
refusal to engage in the activities she avers were or may have been an
attempt to defraud the City of Philadelphia, its agency DBHIDS and the
funding source for this program, Medicare, with a false claim.

39. Defendants NHS, Inc., its employees defendants Malcolm Musgrove, Kim Richardson and Frank Gray as well as defendant Tamitra Foreman violated the plaintiff's privacy rights and committed the tort of **intrusion upon seclusion** against Palma as follows:

    a. These defendants secured and used a secret and unauthorized recording that defendant Foreman admits to making of plaintiff Palma's voice at Gray's direction.

    b. Foreman admits that this recording was made in secret, without consent, in a private place, concerning the plaintiff's private affairs.

    c. Foreman then admits to transmitting this recoding to defendants Kim Richardson and NHS, Inc.

    d. Plaintiff avers that this interference is highly offensive to the reasonable person. Making and making use of this recording intruded upon plaintiff Palma's seclusion.

40. Palma however did not learn of the actual existence and transmission of this intrusive recording until her counsel interviewed defendant Foreman on January 24, 2012.  During this interview defendant Foreman stated that she had secretly recorded plaintiff Palma's conversation during a private meeting at Foreman's house and transmitted that to defendant Richardson and NHS, Inc as instructed by co-defendant Frank Gray.

41. On or about April 15, 2011, Palma had learned from defendant Richardson that NHS, Inc., had asked Richardson to investigate a complaint against plaintiff

Palma from defendant Foreman but did not learn, at all, that any of her private conversations had been recorded and provided to NHS.

42. On or about May 1, 2012 Palma learned the outcome of Richardson's investigation.  Palma was terminated from NHS, Inc., as a result of Foreman's complaint to NHS, Inc. which NHS, Inc., investigation determined as Palma's breach of her HIPAA duties.

43. Palma avers she breached no HIPAA duty, she is not subject to HIPAA and that the use of the illegal recording to justify her termination is invasion of her privacy.

44. Defendants NHS, Inc., its employees defendants Frank Gray, Kim Richardson and Malcolm Musgrove and defendant Tamitra Foreman violated the plaintiff Palma's privacy rights and violated 18 Pa. Cons. Stat §5703, 5725, the "Pennsylvania Wiretapping Law".

45. Defendants similarly **violated the Federal Wiretap Act** when they secured and used a secret and unauthorized recording that defendant Foreman admits to making of plaintiff Palma's voice.

46. The ultimate harm that stems from this illegal recording is the termination of plaintiff Palma's employment from NHS, Inc. which Palma learned on or about May 1, 2011 and which NHS, Inc. has stated, on the record, was the result of its investigation of Foreman's complaint and illegal recording.

47. Defendant NHS, Inc., actively hid from plaintiff Palma the existence of this recording.

**As to Both Plaintiffs Lora and Plaintiff Palma:**

48. Plaintiffs bring this action to require Defendant NHS, Inc.,  to **pay back wages** owed to Plaintiffs which Defendant NHS, Inc.,  failed to pay in violation of § 7 of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. 201, *et seq.* ("the Act"). Plaintiffs seek permanent injunctive relief and damages.

49. Plaintiffs were hourly non-exempt employees of Defendant NHS, Inc., who earned, but did not receive, compensation for time worked, together with time and one-half pay for time spent over 40 hours per week from Defendant.

50. The plaintiffs at all times relevant hereto were an "employee" as that term is defined by 29 U.S.C. §203 (e).

51. The defendant was at all times relevant hereto was an "employer" as that term is defined by 29 U.S.C. §203 (d).

52. NHS, Inc.'s employees such as plaintiffs regularly handled and worked on goods and services such as evaluation forms, treatment plans, billing forms, office supplies, mail, etc. which moved in interstate commerce. Plaintiffs were not paid for all the time that they worked at NHS, Inc.  Instead, NHS, Inc. paid plaintiffs an arbitrary pay without regard to the time plaintiffs actually expended working. Thus, the defendant NHS, Inc., improperly failed to compensate the plaintiffs for all time they were at work discharging their work-related duties.

53. For example, NHS, Inc., simply did not pay plaintiff Lora for her staying over time to finish her "charts" an activity which was always done after 40 hours of work in a week.

54. Similarly, NHS, Inc., simply did not pay plaintiff Palma for her staying over time to review these "charts" and/or to hold "supervisions" which activities were done after 40 hours of work in a week.

55. Plaintiffs were regularly required to work over forty hours per week and never received overtime.  However, despite working overtime, plaintiffs were not paid time and one-half pay from Defendant for overtime worked.

56. On information and belief, and in violation of the FLSA, Defendant did not, during all relevant times, until recently, post the FLSA laws in an area alerting plaintiff of her rights to payment for time worked and to overtime pay under the FLSA.

57. Consequently, plaintiffs were until very recently, never aware that the FLSA provided for compensation for time actually worked rather than an arbitrary determination and for time and one-half pay for overtime worked or that they were owed compensation for actual time worked and time and one-half pay for overtime worked as a case worker/social worker for plaintiff Lora and as a Program Supervisor for plaintiff Palma.

58. Defendant led plaintiffs to believe that their regular pay was paid in conformity with the FLSA and the laws of the Commonwealth of Pennsylvania.  Defendant knew or should have known that plaintiffs were entitled to compensation for time actually worked and for time and one-half overtime pay under the FLSA, during all relevant times.  The Defendant's failure to properly administer a compensation scheme for overtime was a willful and knowing violation of the FLSA and the Pennsylvania analogous laws.

59. Plaintiff Lora presented a demand for past unpaid wages to defendant NHS, Inc., for $16,202.16 on September 28, 2011.  Palma did the same for $37,440.00 on May 16, 2011.  Their demands went unanswered.

60. Defendant NHS, Inc., **defamed and libeled** plaintiffs with actions that are not employer-privileged because they consisted of slander per se and took place while defendant NHS, Inc., acted with malice and in direct violation of the plaintiffs' stated desires and professional standards.

   a. It is averred that defendant NHS, Inc., committed slander per se when it made the plaintiffs employment conditional on their participation in an alleged back dating fraud scheme.  Defamatory statements imputing to another "a matter incompatible with one's business, trade, profession or office" constitute slander per se under §573 of the Restatement (Second) of Torts.

   b. Defendant's statements violate 42 Pa. C.S.A. § 8343 regarding civil actions for defamation in that NHS, Inc., knowingly, recklessly, negligently and maliciously communicated highly defamatory and embarrassing statements about Plaintiffs to several of Plaintiffs' colleagues, peers, co-workers and especially patients and their parents including that they were "insubordinate" or had violated HIPAA.

   c. By virtue of the defamatory communication, several NHS, Inc's patients/clients and their parents who received services from plaintiffs have witnessed acts that run counter to the professional standards of plaintiff's; from Plaintiffs.

61. It is slander per se for NHS, Inc., to have subjected plaintiffs to the humiliating requirement that they go out to their patients and collect signatures to accuse receipt of services that were not performed, or that if at all were performed in the past which plaintiffs suspected was an attempt to procure a false claim.

62. At all material times plaintiffs acted in the course and scope of their employment with Defendant NHS, Inc.

63. As a direct and proximate result of Defendant NHS, Inc.'s defamatory actions, Plaintiffs have suffered the indignity of defamation of character, and invasion of their rights to be free from defamation.

64. As a direct and proximate result of Defendant NHS, Inc.'s defamatory actions Plaintiffs have experienced economic and non-economic loss including, but not limited to: pain and suffering, mental anguish, humiliation, painful embarrassment among their friends and co-workers, disruption of their personal and professional lives and loss of enjoyment of the ordinary pleasures of life.

65. The above mentioned acts were willful, wanton, malicious, and oppressive and justify the award of punitive damages.

## COUNT I

## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

## RACE BASED DISCRIMINATION

## PLAINTIFFS LORA AND PALMA v. DEFENDANT NHS, INC.

66. Plaintiffs incorporate by reference the previous paragraphs as if the same were set forth more fully at length herein.

67. At all material times, Plaintiffs have been subjected to adverse employment action with Defendant NHS, Inc., based on their race and national origin, Latinas of Dominican Republic and Mexican national origin respectively including but not limited to failure to promote and termination.

68. The aforementioned discrimination was based solely on Plaintiffs' race.

69. It is believed and averred that Defendant NHS, Inc., instigated and/or knew or should have known of the offensive treatment which created a hostile work environment for Plaintiffs.

70. The racial discrimination which Plaintiffs seek to redress constituted employment practices which are made unlawful by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*

71. As a direct and proximate result of Defendant NHS, Inc.'s unlawful employment practices and disregard for Plaintiffs' rights and sensibilities, Plaintiffs have been deprived of economic and non-economic benefits including, but not limited to wage loss, pain and suffering, mental anguish, humiliation, loss of fringe benefits, painful embarrassment among their friends and co-workers, disruption of their personal lives and loss of enjoyment of the ordinary pleasures of life.

72. The above-mentioned acts were willful, wanton, malicious and oppressive and done with reckless disregard for Plaintiffs' federally protected rights, therefore justifying the imposition of punitive damages.

## COUNT II

## PENNSYLVANIA HUMAN RELATIONS ACT

## RACE BASED DISCRIMINATION

**PLAINTIFFS LORA AND PALMA v. DEFENDANT NHS, INC.**

73. Plaintiffs incorporate by reference the previous paragraphs as if the same were set forth more fully at length herein.

74. At all material times, Plaintiffs have been subjected to adverse employment action with Defendant NHS, Inc., based on their race and national origin, Latinas of Dominican Republic and Mexican national origin respectively including but not limited to failure to promote and termination.

75. The aforementioned discrimination was based solely on Plaintiffs' race.

76. It is believed and averred that Defendant NHS, Inc., instigated and/or knew or should have known of the offensive treatment which created a hostile work environment for Plaintiffs.

77. The race discrimination which Plaintiffs seek to redress constituted employment practices which are made unlawful by the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.*

78. As a direct and proximate result of Defendant NHS, Inc.'s unlawful employment practices and disregard for Plaintiffs' rights and sensibilities, Plaintiffs have been deprived of economic and non-economic benefits including, but not limited to wage loss, pain and suffering, mental anguish, humiliation, loss of fringe benefits, painful embarrassment among her friends and co-workers, disruption of their personal life and loss of enjoyment of the ordinary pleasures of life.

**COUNT III**

**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

**RETALIATION**

**PLAINTIFFS LORA AND PALMA v. DEFENDANT NHS, INC.**

79. Plaintiffs incorporate by reference the previous paragraphs as if the same were set forth more fully at length herein.

80. The adverse employment actions described for Plaintiff Lora and for Plaintiff Palma of this complaint are a direct result of the plaintiff's engagement in the protected activity.

81. The adverse employment actions are a direct result of the plaintiff's engagement in the protected activity.

82. As a direct and proximate result of Defendant NHS, Inc.'s unlawful employment practices and disregard for the Plaintiffs' rights and sensibilities, Plaintiffs have been deprived of economic and non-economic benefits including, but not limited to wage loss, pain and suffering, mental anguish, humiliation, loss of fringe benefits, painful embarrassment among her friends and co-workers, disruption of their personal life and loss of enjoyment of the ordinary pleasures of life.

## COUNT IV

## PENNSYLVANIA HUMAN RELATIONS ACT

## RETALIATION

**PLAINTIFFS LORA AND PALMA v. DEFENDANT NHS, INC.**

83. Plaintiff incorporates by reference the previous paragraphs as if the same were set forth more fully at length herein

84. Plaintiffs incorporate the averments in Count III as if stated here at length as they constitute violations of the retaliation provision of the Pennsylvania Human Relations Act.

85. Plaintiffs demand compensation pursuant to the act.

## COUNT V

## DAMAGES FOR INTENTIONAL DISCRIMINATION PURSUANT TO 42 U.S.C. §1981

## PLAINTIFFS LORA AND PALMA v. DEFENDANT NHS, INC.

86. Plaintiffs incorporate by reference the previous paragraphs as if the same were set forth more fully at length herein.

87. Pursuant to 42 U.S.C. §1981, Plaintiffs have been denied their right, because of their race, to make and enforce contracts.  Similarly, plaintiffs have been consistently denied promotions and have been denied the enjoyment of all benefits, privileges, terms and conditions of their contractual relationship with Defendant NHS, Inc.

88. Thus, the plaintiffs have suffered, and will continue to suffer severe mental an emotional pain, suffering and humiliation.

89. The above mentioned acts were willful, wanton, malicious and oppressive and done with reckless disregard for Plaintiffs' federally protected rights, therefore justifying the imposition of punitive damages.

## COUNT VI

## FLSA

## VIOLATION OF § 7 OF THE FAIR LABOR STANDARDS ACT OF 1938, AS AMENDED, 29 U.S.C. 201, *ET SEQ.*

## PLAINTIFFS LORA AND PALMA v. DEFENDANT NHS, INC.

90. Plaintiffs incorporate by reference the previous paragraphs as if the same were set forth more fully at length herein.

91. Pursuant to 29 U.S.C. §§ 207, 216, Defendant NHS, Inc., owes Plaintiffs compensation for the overtime work, an additional equal amount as liquidated damages, together with an additional sum for attorneys' fees and costs.

92. Plaintiffs are workers under the meaning of the act and have presented demands for their past unpaid overtime to defendant NHS, Inc.

93. Plaintiffs now demand the payment of these past due wages.

## COUNT VII

### PENNSYLVANIA DEFAMATION

### SLANDER AND LIBEL PURSUANT TO 42 Pa. C.S.A. § 8343 AND §573 RESTATEMENT (SECOND) OF TORTS

### PLAINTIFFS LORA AND PALMA v. DEFENDANT NHS, INC.

94. Plaintiffs incorporate by reference the previous paragraphs as if the same were set forth more fully at length herein.

95. Asking a plaintiffs to commit an alleged fraud, to go out, lie to parents/clients and obtain backdated signatures for services that may not have been rendered, is the defendants' imputing the plaintiff to engage in an act that goes against the rules and practices of the person's profession is thus slander per se.

96. Plaintiffs belong to the social work profession and aver that it is against the standards of that profession to be forced to solicit signatures from the parents of their clients for backdated forms claiming billing for services that might or might

not have been delivered in the past and which solicitation was made a condition of continued employment.

97. Defendants asked plaintiffs to breach and ignore their duties to their clients as social workers.

98. Thus plaintiffs fall squarely within the definition of slander per se in Pennsylvania.

99. Both plaintiffs make respective claims pursuant to 42 Pa. C.S.A. §8343 and §573 Restatement (Second) of Torts.

**COUNT VIII**

**PENNSYLVANIA PRIVACY**

**FALSE LIGHT PURSUANT TO §652(E) RESTATEMENT (SECOND) OF TORTS**

**PLAINTIFFS LORA AND PALMA v. DEFENDANT NHS, INC.**

100.    Plaintiffs incorporate by reference the previous paragraphs as if the same were set forth more fully at length herein.

101.    Defendant NHS, Inc., violated the plaintiffs' privacy rights when NHS, Inc., placed the plaintiffs in a false light that what highly offensive as NHS, Inc., knew or recklessly disregarded the falsity of the matters it published concerning each of the plaintiffs.

102.    Defendant NHS, Inc., committed this tort when it made the plaintiff's violation of their own ethical duties as social workers a condition for continued employment at NHS, Inc.

103.     The violation of the duty of care and loyalty that a social worker owes to

her clients involved NHS Inc.'s demand that plaintiffs' obtain signatures from

their clients' parents on forms that were backdated and allegedly used to defraud

the City of Philadelphia and its funding source, Medicare.

104.     Thus plaintiffs were placed in a false light as NHS, Inc., made a breach of

their duty and participation in an alleged fraud scheme a term and condition of

plaintiffs' employment.

105.     Both plaintiffs make respective claims pursuant to §652(E) of the

Restatement (Second) of Torts.


## COUNT IX

## FALSE CLAIMS ACT

## RETALIATION FOR INTERNAL WHISTLE BLOWING PURSUANT TO 31 USC §3730

## PLAINTIFFS LORA AND PALMA V. DEFENDANT NHS, INC.

106.     Plaintiffs incorporate by reference the previous paragraphs as if the same

were set forth more fully at length herein.

107.     Plaintiffs aver that defendant NHS, Inc., asked them to participate in the

production of false records or statements that were used to get a false or

fraudulent claim paid by a federally funded Medicare-paid program.

108.     Specifically plaintiffs aver that NHS, Inc., made it an actual condition of

their continued employment at NHS for plaintiffs to go out to their clients and

their clients' parents (all members of the special needs/autism community in

Philadelphia and thus eligible for Medicare funds) and as part of their delivery of

social services secure signatures from these parents on forms that were backdated and that sought to document and eventually bill the City of Philadelphia for services that were never provided.

109.    The forms where NHS, Inc., asked the plaintiffs to collect the signatures were presented to the City of Philadelphia for payment of autism-related services. This payment is Medicare funded and thus constituted a false claim.

110.    Plaintiffs aver that this scheme and practice of collecting back-dated signatures for creation of a false record that would and was presented to a Medicare-funded program of the City of Philadelphia was common practice at NHS, Inc., and not limited to a request from NHS to the two plaintiffs, but rather better described as NHS's demand and expectation from its whole workforce.

111.    Plaintiffs aver that both of them were terminated from NHS, Inc., because they expressed concern and eventually refused to collect these signatures as they realized that they were being collected with the purpose of creating a false record that would be material to the payment of a fraudulent claim through a federally funded Medicare program.

112.    Both plaintiffs make claims under the anti-retaliation provision of the False Claims Act against NHS, Inc.

## COUNT X

### PENNSYLVANIA PRIVACY

### INTRUSION UPON SECLUSION PURSUANT TO §652(B) RESTATEMENT (SECOND) OF TORTS

## MERCEDES PALMA v. DEFENDANTS NHS, INC, MALCOLM MUSGROVE, KIM RICHARDSON FRANK GRAY AND TAMITRA FOREMAN

113.     Plaintiff Palma incorporates by reference the previous paragraphs as if the same were set forth more fully at length herein.

114.     Plaintiff Palma avers that defendants NHS, Inc., its employees' defendants Kim Richardson, Frank Gray and Malcolm Musgrove and the mother of one NHS, Inc.'s clients, defendant Tamitra Foreman, violated Palma's rights and committed the tort of intrusion upon seclusion against her.

115.     Defendants committed this tort when they secured an unauthorized and secret recording of Palma's voice which was then used to support the employer NHS, Inc.'s pretextual reason for terminating Palma's employment.

116.     NHS, Inc., has admitted in separate litigation that it fired Palma because defendant Foreman complained that Palma committed a HIPAA violation in the context of Palma's conversations with Foreman.

117.     Palma avers that this conversation was private, confidential, covered under the social-worker privilege and additionally not covered in any way or related to HIPAA.

118.     Palma avers that she never was aware of the fact that her conversation was recorded nor did she ever authorize her conversations to be recorded.

119.     Palma avers that defendants' use of a recording of this conversation as grounds for terminating Palma's employment is a violation of her seclusion.

120.     Palma makes a claim for damages under §652(b) of the Restatement (Second) of Torts.

**COUNT XI**

**PENNSYLVANIA WIRETAPPING LAW**

**VIOLATION OF 18 PA CONS STAT §5703, 5725**

**MERCEDES PALMA v. DEFENDANTS NHS, INC. MALCOLM MUSGROVE, KIM RICHARDSON FRANK GRAY AND TAMITRA FOREMAN.**

121.    Plaintiff Palma incorporates by reference the previous paragraphs as if the same were set forth more fully at length herein.

122.    Defendant NHS, Inc., violated the plaintiff's rights under 18 Pa. Cons. Stat. §§5703, 5725 when NHS, Inc., intercepted, endeavored to intercept and/or procured and used a secret and unauthorized recording that defendant Foreman admits to having made of plaintiff Palma's voice which was made in a confidential context and without the knowledge or consent from plaintiff Palma at the behest of NHS.

123.    Defendant NHS, Inc., then used this illegal recording to support its pretextual reason for terminating Palma's employment as well as to commit other torts against Palma knowing or having reason to know that the information had been obtained through the unauthorized interception of an oral communication.

124.    Plaintiff's conversation and any other data that defendant intercepted or endeavored to intercept and procured is a "communication" within the meaning of the wiretap act.

125.    Defendant NHS, Inc., intentionally and willfully intercepted, endeavored to intercept and procured these aural communications of plaintiff and used those

communication to decide and justify their decision to terminate Plaintiff and commit torts against her.

126.     Defendant NHS, Inc., also withheld knowledge of the existence of this intercepted aural communication from plaintiff.  In fact, when asked to produce this information under subpoena in a separate action in Philadelphia Court of Common Pleas, NHS, Inc.'s counsel refused to produce the information that would have disclosed the existence and use of this intercepted communication.

127.     NHS counsel actually placed on the record in the separate action in Philadelphia Common Pleas an objection to plaintiff's Palma subpoena in violation of counsel's ethical duties to not aid and abet a client in the commission of a crime.

128.     Plaintiff is a person whose aural communications were intercepted within the meaning of 18 Pa. Cons. Stat. §5703 and entitled to civil remedy including actual damages and attorney's fees pursuant to 18 Pa. Cons. Stat. §5725(a).

129.     Defendant NHS, Inc., is a juridical person who intercepted, endeavored to intercept and/or procured this unauthorized recording within the meaning of 18 Pa. Cons. Stat. §5703 (1)-(3).

130.     Defendants Musgrove, Richardson and Gray were at the time of the recording, employees of defendant NHS, Inc., who acted as its agent when they procured the defendant Foreman's to record Palma's private conversation as an illegal wiretap.

131.     Section 5725(a) provides for civil remedy including actual damages, punitive damages, reasonable attorney's fees and other litigation costs.  Palma so claims.

## COUNT XII

## FEDERAL WIRETAP ACT

## VIOLATION OF 18 USC 2511

## <u>MERCEDES PALMA v. DEFENDANTS NHS, INC., MALCOLM MUSGROVE, KIM RICHARDSON FRANK GRAY AND TAMITRA FOREMAN</u>

132.     The Federal Wiretap Act as amended by the Electronic Communications Privacy Act of 1986 prohibits the willful interception of any wire, oral or electronic communication.

133.     18 USC 2520(a) provides a private right of action to any person whose wire, oral or electronic communication is intercepted.

134.     Defendants Tamitra Foreman, Frank Gray, Kim Richardson and Malcolm Musgrove, acting as agents of NHS, Inc., intercepted at least one oral and possibly several electronic communications of plaintiff Palma's and used these intercepted communications in different occasions for different purposes all detrimental to plaintiff Palma.

135.     Plaintiff's conversation and any other data that defendants intercepted is a "communication" within the meaning of the wiretap act.

136.     Defendants intentionally and willfully intercepted these communications of plaintiff.

137.     Plaintiff is a person whose communications were intercepted within the meaning of Section 2520.

138.     Section 2520 provides for preliminary, equitable and declaratory relief in addition to statutory damages the greater of $10,000.00 or $100 a day per each violation, actual and punitive damages, reasonable attorney's fees.  Palma so claims.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs Yenny Lora and Mercedes Palma pray for relief from this Honorable Court as follows:

(a) that this Court award such equitable relief as is proper for the unlawful failure to promote and termination on account of Plaintiffs race and national origin, including but not limited to back wages to the date of failure to promote and reinstatement to previous seniority position. 42 U.S.C.§2000e-5(g)(1) in excess of $150,000.00 each;

(b) that this Court award Plaintiffs their back wages and unpaid overtime under their FLSA and Pennsylvania minimum wage law claims;

(c) that this Court award Plaintiffs an amount to be determined at trial as compensation for their humiliation, embarrassment, loss of reputation, and loss of self-esteem in excess of $150,000.00 each;

(d) that this Court award Plaintiffs damages and reasonable attorney's fees and the costs of this action for the race-based and retaliation claims, pursuant to 42 U.S.C. §2000e-5(k)

(e) that this Court award plaintiffs damages against NHS, Inc., for defendant NHS, Inc.'s slandering, libeling, defaming and placing the plaintiffs in false light.

(f) that this Court award plaintiffs damages as well as attorney's fees and costs for NHS, Inc.'s violation of the anti-retaliation provision of the False Claims Act.

(g) that this Court award Plaintiff Palma actual and compensatory damages as a result of the defendants' intrusion upon Palma's seclusion.

(h) that this Court award Plaintiff Palma actual and compensatory damages as well as reasonable attorney's fees and the costs of the illegal wiretap claim pursuant to 18 Pa. Cons. Stat. §§5703, 5725.

(i) that this Court award Plaintiff Palma statutory damages as well as reasonable attorney's fees and costs for the illegal wiretap pursuant to 18 USC 2511.

(j) that this Court award punitive damages; and

(k) that this Court grant Plaintiff such other relief as may be just and equitable.

Respectfully submitted,


Dated:  April 30, 2012            /s/ Raul Jauregui
                                  Raul Jauregui, Esq.
                                  PA Bar ID No. 92366
                                  Attorneys for Plaintiffs Lora and Palma
                                  PARISH MCCABE, PC
                                  105 Rutgers Avenue
                                  PO Box 121
                                  Swarthmore, PA 19081
                                  215.559.9285
                                  RJ@ParishMcCabe.com

**PROOF OF SERVICE**

Lora et al. v. NHS, Inc., et al
EDPA civil No. _____

COMPLAINT

I certify that I am over 18 years of age and that in accordance with the provisions of the Federal Rules of Civil Procedure and of the Commonwealth of Pennsylvania's rules for service of process, today I served on behalf of the plaintiff via PERSONAL SERVICE and via first class certified US MAIL to the legal representative address, a true and correct copy of the above referenced documents addressed to:

Pat Murhpy, Esquire
Attorney of Record for NHS, Inc. and Malcolm Musgrove
Kelley & Murphy, LLP
350 Sentry Parkway
Building 640, Suite 300
Blue Bell, PA 19422

NHS, Inc.
620 E. Germantown Pike
Lafayette Hill, PA 19444

Malcolm Musgrove
NHS, Inc.
620 E. Germantown Pike
Lafayette Hill, PA 19444

Kim Richardson
NHS, Inc.
350 Sentry Parkway, First Floor
Blue Bell, PA 19422

Tamitra Foreman
2850 B Street
Philadelphia, PA 19134

Frank Gray
6810 Martins Mill Road
Philadelphia, PA 19111

:

_____

Dated:  May 1, 2012                                    Raul Jauregui, Esq.